IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JOSH MALONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-1050 |
| | ) |
| UNITED STATES PATENT AND | ) |
| TRADEMARK OFFICE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant United States Patent and Trademark Office's (USPTO or "Agency") Motion for Summary Judgment and Plaintiff Josh Malone's Cross-Motion for Summary Judgment.

In February 2023, Plaintiff submitted two Freedom of Information Act (FOIA) requests seeking information from USPTO. The first FOIA request primarily concerns paneling procedures for an Inter Partes Review (IPR) proceeding that was pending before USPTO's Patent Trial and Appeal Board (PTAB). The second FOIA request mainly seeks information about potential conflicts of interest of the Administrative Patent Judges (APJs) for a different IPR proceeding. USPTO ultimately provided over 1,500 pages of documents to Plaintiff for both requests combined, and there is no dispute over much of the production. Instead, Plaintiff's dispute has been narrowed to two discrete issues:

1

(1) the use of Exemption 5 to withhold or redact certain documents; and (2) the awarding of attorneys' fees.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

FOIA mandates disclosures of records held by a federal agency unless the documents fall within enumerated exemptions. Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7-8 (2001) (citing 5 U.S.C. § 552). Exemption 5 exempts the disclosure of "inter-agency or intra-agency memorandums or letters that would not be available by law to the party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have read Exemption 5 to protect "materials which would be protected under the attorney-client privilege;

2

the attorney work-product privilege; or the executive 'deliberative process' privilege." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980) (internal citations omitted). As it relates to the deliberative process privilege, Exemption 5 "is designed to protect the quality of administrative decisionmaking by ensuring that it is not done 'in a fishbowl.'" City of Va. Beach, Va. v. U.S. Dep't of Commerce, 995 F.2d 1247, 1252 (4th Cir. 1993) (quoting Env't Prot. Agency v. Mink, 410 U.S. 73, 87 (1973)).

When withholding or redacting documents under the deliberative process privilege of Exemption 5, the government has the burden of showing that the documents are both predecisional and deliberative. Id. at 1253 (citing Wolfe v. Dep't of Health & Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988)). "Predecisional documents are 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" Id. (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)). To be deliberative, the material must "'reflect[] the give-and-take of the consultative process,' by revealing the manner in which the agency evaluates possible alternative policies or outcomes." Id. (quoting Coastal States Gas Corp., 617 F.2d at 866). Exemption 5 is designed to protect "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions

3

of the writer rather than the policy of the agency." Coastal States, 617 F.2d at 866.

At the core of the parties' dispute over certain documents that were withheld or redacted is whether the communications between panel APJs and non-panel USPTO employees fall within the scope of Exemption 5. Plaintiff points to the use of the Circulation Judge Pool, a group of non-management APJs that review and provide suggested edits for some draft decisions by panel APJs, as an illustration of communications that Plaintiff claims fall outside of the scope of Exemption 5. Plaintiff argues that the practice of the panel ALJs consulting other USPTO employees when deciding a case is a practice that violates the Administrative Procedures Act (APA). Plaintiff asserts the APA prohibits a hearing examiner from consulting any person or party, including other agency officials, concerning issues in a proceeding, unless notice and opportunity to participate is given to all parties involved. Plaintiff also raises due process concerns over the practice of consulting with other USPTO employees that are not the panel APJs.

In support of these arguments, Plaintiff points to Stone v. F.D.I.C., 179 F.3d 1368 (Fed. Cir. 1999), in which the Federal Circuit vacated and remanded an employee removal proceeding because the deciding official was sent two ex parte memoranda from agency officials advocating for the employee's removal

without providing the employee notice and opportunity to respond to the memoranda. Plaintiff likens the _ex parte_ memoranda in _Stone_ to the intra-agency communications between the panel APJs and the non-panel USPTO employees, and he contends that the parties should be provided notice and opportunity to respond to such intra-agency communications. Plaintiff then argues that, because these communications between the panel APJs and other USPTO employees were made _ex parte_ without giving the parties notice and opportunity to respond, the communications fall outside the scope of Exemption 5.

In essence, Plaintiff is attempting to shoehorn an argument that intra-agency communications between panel APJs and other non-panel USPTO employees are unconstitutional and in violation of the APA into a FOIA case. However, Plaintiff provides no legal authority to demonstrate to the Court that it should reach such a broad conclusion on the legality and constitutionality of these communications when addressing such FOIA claims. Even the cases Plaintiff cites in support of his argument are direct challenges of agency actions from the parties potentially harmed by the violations, not FOIA cases brought by a third parties that likely do not have standing to bring direct challenges. The Court also notes that the broad finding that Plaintiff seeks could significantly disrupt the practices and procedures that USPTO has in place for its proceedings. A broad finding could

greatly restrict the ability for APJs to communicate with any non-panel USPTO employees, including not only other APJs, but also paralegals, clerks, assistants, and others. Without any precedent on point demonstrating that the communications between the panel APJs and non-panel USPTO employees are ex parte communications akin to the memoranda in Stone, the Court declines to reach such a conclusion in this case. If one seeks such a holding regarding constitutional and statutory violations with such far-reaching implications as the one Plaintiff seeks here, that issue is best addressed through a case brought by parties that could be injured by those violations, not through FOIA claims.

That said, it is still required that the documents withheld and redacted by USPTO under Exemption 5 be predecisional and deliberative. These withheld and redacted documents are about draft PTAB decisions sent between the panel APJs and other non-panel PTAB employees, many of whom are also APJs. There is little doubt that the documents are pre-decisional, as they relate to draft decisions that have not yet been published by the PTAB panel. These draft decisions are also precisely the type of documents that are considered deliberative, as they constitute initial drafts of decisions and feedback from other PTAB employees about the decisions. Such communications reflect the give-and-take of the consultative process that occurs within

6

PTAB, and such communications would reveal the manner in which PTAB evaluates these cases. Accordingly, USPTO has carried its burden of showing that these documents were properly withheld under Exemption 5.

Regarding attorneys' fees, FOIA permits the Court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To be awarded attorneys' fees, Plaintiff must establish that he is both eligible and entitled to the fees. Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011). The eligibility prong of the analysis hinges on whether Plaintiff "substantially prevailed." Id. FOIA provides that a plaintiff substantially prevails when the plaintiff "obtained relief through either--(I) a judicial order, or enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

When a plaintiff relies on the voluntary or unilateral change in position by the agency prong, the Court must view the case in its totality. Mobley v. Dep't of Homeland Security, 908 F. Supp. 2d 42, 48 (D.D.C. 2012). Plaintiff "must establish the threshold requirement, that the lawsuit, 'could reasonably be

regarded as necessary to obtain the information.'" Nuclear Control Inst. v. U.S. Nuclear Regulatory Comm'n, 595 F. Supp. 923, 926 (D.D.C. 1984) (quoting Cox v. U.S. Dep't of Justice, 601 F.2d 1, 6 (D.C. Cir. 1979)). Additionally, there must be evidence that the existence of the lawsuit had a causative effect on the release of the information. Miller v. U.S. Dep't of State, 779 F.2d 1378, 1389 (8th Cir. 1985). "Although the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation, it is nonetheless a salient factor in the analysis." Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d 225, 231-32 (D.D.C. 2012) (quoting Weisberg v. DOJ, 745 F.2d 1476, 1496 (D.C. Cir. 1984); Elec. Privacy Info. Ctr. v. DHS, 811 F. Supp. 2d 216, 232 (D.D.C. 2011)) (cleaned up). Furthermore, even if documents were turned over to a plaintiff as a result of the lawsuit, the plaintiff must prove that he received more than a "minimally significant" portion of the material requested. Nuclear Control Inst., 595 F. Supp. at 926 (citing Braintree Elec. Light Co. v. Dep't of Energy, 494 F. Supp. 287, 291 (D.D.C. 1980)).

The timeline of the productions in this case is relevant to consider when evaluating whether the lawsuit caused USPTO to expedite its productions. Plaintiff submitted both FOIA requests to USPTO in February 2023. According to USPTO, it then completed

8

its collection of documents responsive to the first FOIA request in early April 2023. This case was then filed on May 17, 2023, and it was served on May 31, 2023. USPTO completed production of documents for the first FOIA request on June 23, 2023. Plaintiff then produced an interim response of documents responsive to the second FOIA request on September 12, 2023. In the Agency's Opposition to Separate Briefing Schedules filed on November 3, 2023, USPTO agreed to substantively complete its production of documents responsive to the second FOIA request by January 19, 2024. USPTO then provided interim responses to the second FOIA request on November 7, 2023 and November 20, 2023. USPTO made its final production to the second FOIA request on January 18, 2023. On February 21, 2024, USPTO lifted some of the withholdings it had made on roughly fourteen pages that were previously redacted or withheld.

Plaintiff puts forward two categories of production that he alleges result in him "substantially prevailing" in this case. First, Plaintiff argues that his lawsuit expedited USPTO's production of documents. Plaintiff cites the USPTO production of documents made on June 23, 2023, shortly after the complaint was served on USPTO on May 31, 2023. Additionally, Plaintiff claims that USPTO's promise to complete a substantive portion of its production for the second FOIA request by January 19, 2024 is evidence that their efforts were expedited by this litigation.

9

Plaintiff has the burden of drawing a causal link between this litigation and the productions.

However, Plaintiff offers little more than a <u>post hoc, ergo propter hoc</u> justification for the June 2023 production, which is exactly the rationale that courts have routinely rejected as failing to provide a sufficient causal link between the litigation and production. <u>See Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives</u>, 272 F. Supp. 3d 49, 53–54 (D.D.C. 2017). Furthermore, the fact that USPTO completed its search for documents responsive to the first FOIA request in April 2023, before the litigation began, supports a conclusion that the litigation had no impact on the timing of the production. Similarly, Plaintiff's claim that USPTO's production responsive to the second FOIA request was expedited as a result of the litigation fails from lack of evidence. While Defendant did agree, as part of the litigation, to complete its production by January 19, 2024, there is no evidence before this Court that USPTO would not have completed its production by that date anyway, especially when considering it had made prior interim productions. Without more, Plaintiff fails to meet his burden of proving that the litigation expedited Defendant's productions.

Second, Plaintiff argues that the late production made in February 2024 is evidence that he substantially prevailed in this litigation. Since this production was made two days before

the deadline for USPTO to file its motion for summary judgment and Vaughn index, Plaintiff contends that this voluntary change was clearly made as a result of this litigation. The timing of the February 2024 production is such that the Court can reasonably draw a causative connection between this litigation and the release of those documents. However, that is not the end of the analysis, as the production must be viewed in the context of the totality of the case.

Importantly, as Defendant notes, this production involved only fourteen pages that were previously redacted or withheld. The size of this production was minor compared to the 1,505 pages produced to Plaintiff across both of his FOIA requests. Moreover, these pages appear to be relatively insignificant when viewing the case in its totality. As described in the Complaint, Plaintiff's first FOIA request seeks information about whether standard operating procedures were followed in the selection of panel APJs a certain IPR proceeding, especially as it relates to the internal processes involved in replacing one APJ with another. The second request seeks information regarding potential conflicts of interest of IPR panel members for a separate IPR proceeding. According to the Agency, the pages provided in February 2024 include draft agendas for hearings, a finalized panel change order, a list of scheduled hearings, emails about logistics, and two email chains regarding a

finalized order and an email to send to the parties in the PTAB
proceeding. The most relevant here are the pages concerning the
panel change order and notification sent to the parties about
the change in panel, but there is nothing before the Court that
indicates these pages include anything about the internal
processes concerning one APJ's request for removal from the
panel and the second APJ's appointment to the panel. Instead,
these pages seem to contain information about the administrative
process of informing the public and the parties of a change that
had already taken place. They do not appear to relate to the
internal processes involved in the replacement of the APJ on the
panel. The descriptions of the other pages produced give the
impression that they only contain information about ministerial
functions of PTAB, such as logistics, rather than the
substantive information Plaintiff seeks. As such, Plaintiff
fails to prove that this production was anything more than
minimally significant. Accordingly, Plaintiff is not eligible
for attorneys' fees in this case, as he has failed to prove that
he has "substantially prevailed."

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Cross-Motion for Summary Judgment is DENIED. An appropriate Order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
June 17, 2024

13